## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAUL D. GREENE and | ) | |
| MICHELLE GREENE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-135-CDL |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

#### I.     Background

This case arises from the plaintiffs' claims under a homeowners' insurance policy issued by the defendant. On July 11, 2023, District Judge Gregory K. Frizzell denied the defendant's motion for summary judgment as to (1) the plaintiffs' breach of contract claim and (2) the plaintiffs' bad faith claim as it relates to an inadequate investigation of the plaintiffs' claim for water damage to the interior of their home. (Doc. 60). Judge Frizzell granted summary judgment as to the bad faith claim in all other respects. *See id*. Subsequently, the parties consented to the undersigned conducting all further proceedings in this case, and Judge Frizzell signed the order of referral to the undersigned. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Before the Court are several motions in limine filed by the defendant (Doc. 36, 37, 38, 39) and the plaintiffs' motion to exclude the testimony and written report of defendant's

expert, Michael J. Berryman. (Doc. 40). The Court has considered all briefing filed by the parties on the motions and heard oral arguments on certain of the issues set forth herein.

## II.   Defendant's Motions to Exclude

### A.      Standards Applicable to Motions in Limine

District courts have discretion to make preliminary rulings to exclude certain evidence. A motion in limine is a "'pretrial request that certain inadmissible evidence not be referred to or offered at trial.'" *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting Black's Law Dictionary (10th ed. 2014)). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co*., 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted).[1] In-limine rulings are preliminary and are subject to change at the court's discretion. *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

While pretrial in-limine rulings can save time and avoid interruptions at trial, "a court is almost always better situated during actual trial to assess the value and utility of evidence." *Koch v. Koch Ind., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998). "For this

---

[1]      The admissibility of evidence is generally governed by federal law in a case based on diversity jurisdiction, as this case is. *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998). In determining the admissibility of evidence, courts consider state law only to the extent an issue involves "a 'substantive' state rule of evidence, such as the collateral source rule or the parol evidence rule." *Fees v. Am. Fam. Life Ins. Co*., No. 19-cv-476-CVE-JFJ, 2021 WL 2104990, at *1 (N.D. Okla. May 25, 2021) (unpublished) (citing *Blanke*).

reason, some courts defer making in limine rulings unless the 'evidence is clearly inadmissible on all potential grounds.'" *Id.* (quoting *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")). Additionally, the movant has the burden to demonstrate that the evidence is inadmissible on any permissible ground, and motions in limine that lack specificity are properly denied. *See Rooney v. State Farm Fire & Cas. Co.*, 2023 WL 3078332, *1 (D. Colo. Apr. 25, 2023); *see also First Savings Bank v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000).

### B.    Punitive Damages (Doc. 38)

The defendant moves for an order excluding evidence relating to punitive damages, including evidence or argument within the following categories:

A.    Any and all evidence or argument about punitive damages;
B.    Evidence or argument until after the jury has awarded compensatory damages;
C.    Evidence or argument concerning Categories II and III of Oklahoma's punitive damages statute;
D.    Evidence or argument of State Farm's net worth, cash reserves, revenues, income, profit margin, or assets;
E.    Evidence or argument related to State Farm's activities outside the state of Oklahoma;
F.    Evidence or argument concerning conduct affecting or directed at persons other than Plaintiffs;
G.    "Send a message" arguments; and
H.    References to punitive damages in opening statement.

(Doc. 38 at 1). The plaintiffs concede category H above, but otherwise oppose the motion in general fashion and argue that the motion to exclude is premature. (*See* Doc. 47).

Under Oklahoma law, if a jury finds by clear and convincing evidence that an "insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured," a plaintiff who prevails on a bad faith claim may recover "punitive damages in an amount not to exceed the greater of" $100,000 or the amount of the actual damages awarded. *Okla. Stat.* tit. 23, § 9.1(B). Those are "Category I" damages under the statute. *See id.* Category II damages provide for a higher punitive damages cap of the greater of $500,000, twice the amount of actual damages awarded, or the increased financial benefit to the insurer as a direct result of the conduct causing plaintiffs' injury and other persons or entities, upon a finding by the jury that the insurer acted intentionally and with malice. *See id.*, § 9.1(C).

Here, because the plaintiffs' tort claim for bad faith based on an inadequate investigation remains to be tried and determined by a jury, and the Court did not grant summary judgment as to punitive damages, it is not appropriate to enter a pretrial order excluding all evidence concerning punitive damages. However, such evidence may be introduced only if and after the jury has made a sufficient finding as to liability and has found the recklessness or malice required to warrant consideration of punitive damages.

The trial will be conducted in two phases, consistent with the practice in this Court in insurance cases with bad faith claims and consistent with the plain language of the Oklahoma punitive damages statute. *See, e.g., Terril v. State Farm Mut. Auto. Ins. Co.*, 07-CV-228-CVE-PJC, 2007 WL 2344701, *1 (N.D. Okla. 2007); *Watson v. Farmers Ins. Co., Inc.*, 12-CV-391-JED-PJC, 2014 WL 2457243, *3 (N.D. Okla. Jun. 2, 2014); *Okla. Stat.* tit. 23, § 9.1(B), (C) ("the jury, in a separate proceeding conducted after the jury has made"

a finding of reckless disregard or malice, may award punitive damages).  In Phase I, the jury will consider the liability, if any, of the defendant, any compensatory damages, and whether the defendant acted with the requisite level of reckless disregard or malice to be held liable for punitive damages. *Watson*, 2014 WL 2457243, *3; *Okla. Stat.* tit. 23, § 9.1(B), (C). Only if the jury finds, by clear and convincing evidence, that defendant can be held liable for punitive damages will the trial proceed to Phase II for consideration of evidence regarding the amount of punitive damages, if any, to be awarded. *See Fees*, 2021 WL 2104990, at *3.

No jury instruction relating to punitive damages will be given unless and until the jury makes a proper finding of liability on the plaintiff's bad faith claim and the predicate findings of recklessness or bad faith at the conclusion of Phase I of trial. Moreover, no party, attorney, or witness *during Phase I* may refer to a possible second phase of trial, to punitive damages, to the purposes of punitive damages (or "sending a message"), or to the defendant's net worth, cash reserves, revenues, income, profit margin, or assets. Accordingly, defendant's requests to exclude evidence or argument as to categories A, B, C, D, G, and H are **granted in part** (as to Phase I of the trial).

As to defendant's requests to exclude evidence relating to the defendant's activities outside of the state or directed at or affecting persons other than plaintiffs, it is unclear whether the plaintiffs intend to introduce any such evidence, what the purpose for any such evidence would be, or whether it would be appropriately introduced – if at all – in Phase I of trial or Phase II (if there is a second phase). Thus, the Court **reserves** ruling as to any evidence within these categories. Objections to specific evidence can be raised at pretrial

conference and/or trial and will be decided at that time if raised. Before any such evidence is referenced or introduced at trial, the plaintiffs' counsel must first forecast the evidence to the Court and opposing counsel, outside the presence of the jury.

### C.      Omnibus Motion in Limine (Doc. 39)

In their Response to the defendant's Omnibus Motion (Doc. 44), plaintiffs state that they do not oppose certain requests set forth in defendant's Motion. The following discussion notes where the defendant's requests are not contested and sets forth the Court's determination as to whether each request is granted or denied or ruling is reserved. To the extent that the Court reserves ruling as to any motion or request, counsel for the party proposing to present any such evidence should raise the issue in advance of the witness's testimony, outside the presence of the jury, and should be prepared to present specific legal arguments in support of admission.

*Request 1 – Any evidence of the plaintiffs' alleged damages that was not timely disclosed according to the Federal Rules of Civil Procedure.*

The plaintiffs concede this request in part, to the extent it refers to damages from emotional distress. Disagreement remains as to other documents plaintiffs have submitted in the litigation, purportedly tabulating damages.

The defendant argues that, under Fed. R. Civ. P. 26, the plaintiffs' initial disclosures and evidence produced in discovery was inadequate as to their alleged damages. The defendant notes that the plaintiffs submitted one additional estimate or tabulation of damages with their settlement conference statement, which was produced to defendant's counsel shortly before the discovery cutoff in March, 2023. Concerned that reproducing

the damages computation from the settlement conference statement may run afoul of the Court's rules regarding confidentiality of the settlement process, the defendant did not attach that estimate to its motion. (*See* Doc. 39 at 5-7 & nn. 1-2). Another computation of damages was attached to the plaintiffs' response to the defendant's summary judgment motion. (*See* Doc. 44-11). The District Judge struck that exhibit for purposes of summary judgment, but expressly did not determine that Doc. 44-11 should be excluded from the trial.[2] Judge Frizzell granted the motion to strike that exhibit for purposes of summary judgment only and noted that, if the case goes to trial, there may be an issue as to whether the tabulation issue can be rectified by requiring the plaintiffs to correlate documents to particular items of alleged damage.

It is unclear at this time the extent to which the plaintiffs' computations are supported by invoices or other evidence that was produced or whether any failure by plaintiff to provide such evidence in discovery was substantially justified or harmless, as the Court has not been provided any of the damages computations (other than Doc. 44-11) or underlying documents, credit card statements, or any other information that was produced. At the hearing, defense counsel referenced the production of credit card statements with charges, but without underlying line-item receipts. At this point, with such limited specific information provided, the Court cannot rule out that a tabulation of expenses could be potentially helpful to the jury; for example, if used as a demonstrative exhibit. The Court also cannot rule out that the plaintiffs provided adequate notice, for

---

[2]     The undersigned has listened to an audio recording of the summary judgment hearing before Judge Frizzell.

purposes of Rule 26 disclosure, of the approximate amount of damages they seek for their breach of contract claim. *See Wilson v. State Farm Fire & Cas. Co.*, No. 21-cv-62-CVE-SH, 2022 WL 1555816, *13 (N.D. Okla. May 17, 2022). Further rulings on admissibility of any such specific demonstrative or other trial exhibit are thus **reserved** to the time of pretrial and/or trial, when the specific evidence at issue is further developed for the Court's consideration.

*Request 2* – *Evidence regarding plaintiffs' attorneys' fees.*

The plaintiffs do not oppose the request to exclude such evidence. The defendant's motion is **granted** as to this request.

*Request 3* – *Other lawsuits involving State Farm.*

The defendant seeks an order prohibiting the plaintiffs from introducing evidence of other claims or lawsuits involving State Farm or other cases being litigated by the plaintiffs' counsel.

Evidence of "other acts" is admissible in a civil case for certain purposes under Fed. R. Evid. 404. In the Tenth Circuit, a four-part test is applied to determine admissibility:

(1) the evidence must be offered for a proper purpose;

(2) the evidence must be relevant;

(3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and

(4) the jury must be given the proper limiting instructions upon request.

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000) (internal citation omitted).

- 8 -

Federal district courts in Oklahoma have held that, in some cases, evidence of other claims may be admissible. *See, e.g., Hubbell v. State Farm Fire & Cas. Co.*, No. 21-CV-341-CVE-JFJ, 2022 WL 3050020, *8 (N.D. Okla. Aug. 2, 2022) ("Plaintiffs are advised that they may not generally reference the fact that other lawsuits have been filed against State Farm, because this would be unfairly prejudicial and tend to encourage a verdict in their favor based merely on the fact that State Farm has been named as a defendant in other lawsuits. State Farm['s] request to wholly exclude references to other lawsuits is denied, but plaintiffs must abide by the limitation that this evidence may be used only as it relates to the experience or possible bias of State Farm's expert witnesses."); *Charles A. Shadid, L.L.C. v. Aspen Specialty Ins. Co.*, No. CIV-15-595-D, 2018 WL 3420816 (W.D. Okla. July 13, 2018) ("In the Court's view, the question of whether to admit evidence regarding Defendant's alleged similar bad-faith treatment of other insureds is a close one. After careful consideration, however, the Court concludes that Plaintiff's proposed evidence that other insureds of commercial properties in the same locality suffered similar losses and allegedly were subjected to similarly heavy-handed treatment by Defendant during the investigations by the same representatives and adjusters and received similar denials for failure to cooperate (assuming that is the evidence) is relevant to Plaintiff's claim of bad faith conduct and should be admitted.").

Any other lawsuits would be relevant only to the remaining bad faith claim, as limited by Judge Frizzell's summary judgment ruling. The plaintiffs have not identified any prior lawsuits that they seek to introduce, and the Court has insufficient information to determine whether and to what extent any such lawsuits would bear sufficiently similar

circumstances or be relevant to that remaining bad faith claim. Thus, a general pretrial ruling as to the defendant's request for exclusion would not be helpful, given the breadth of the request. As to any specific evidence sought to be introduced, the Court **reserves** ruling upon any proper objection raised at the relevant time. Any such evidence would be admissible only if it satisfies the applicable requirements for evidence of other similar acts. Before referencing any such information, claims, or lawsuits by others at trial, the plaintiffs' counsel shall first raise the issue at pretrial and obtain a ruling permitting such introduction of evidence.

> *Request 4 – Evidence regarding State Farm's advertising, mottos, or slogans.*

The plaintiffs do not oppose the request to exclude such evidence. The defendant's motion is **granted** as to this request.

> *Request 5 – References to the Oklahoma Unfair Claims Settlement Practices Act.*

Defendant seeks to prohibit Plaintiffs from presenting questions or contentions that Defendant violated the Oklahoma Unfair Claims Settlement Practices Act (UCSPA), *Okla. Stat.*, tit. 36, § 1250.01, *et seq.*, in handling Plaintiffs' claim under their homeowners' policy.  Plaintiffs agree that they will not mention the UCSPA "unless the Court determines the jury should be instructed with respect to same." (Doc. 48 at 3).

The UCSPA "was designed to provide the [Oklahoma] Insurance Commissioner with power to regulate the insurance industry by issuing 'cease and desist' orders or by revoking or suspending an insurance company's license to do business in Oklahoma." *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216, 223 (Okla. Civ. App. 2014). However, the statute "does not establish standards of care or

standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing," and "it does not function as an appropriate guide for a jury to determine bad faith." *Id.; see Godfrey v. CSAA Fire & Cas. Ins. Co.,* No. CIV-19-329-JD, 2020 WL 1056306, *5 (W.D. Okla. Mar. 4, 2020) (citing cases and holding that "evidence and reference to the Oklahoma [UCSPA] as a proxy to determine bad faith is irrelevant . . . and . . . would be unfairly prejudicial and confuse the issues."); *Fees*, 2021 WL 2104990, at *3.

Consistent with rulings in this and other courts, the Court determines that questions or contentions to the effect that the defendant violated the UCSPA would be confusing for the jury and unfairly prejudicial. *See, e.g., Stewart v. Brotherhood Mut. Ins. Co.*, No. 16-cv-488-JED-FHM, 2018 WL 4092018, *6 (N.D. Okla. July 10, 2016); *Magallan v. Zurich Am. Ins. Co.,* No. 16-CV-0668-CVE-FHM, 2017 4012964, at *10 (Sept. 12, 2017). Defendant's request therefore is **granted** as to statements or evidence that the defendant violated the UCSPA.

*Request 6 – Assertion that Defendant has a fiduciary duty to the plaintiffs.*

The plaintiffs agree that they will not argue there is a fiduciary duty between the plaintiffs and defendant arising from the policy, but clarify that they intend to argue the defendant had a non-delegable duty of good faith and fair dealing in dealing with the plaintiff's claims. The defendant's motion is **granted** as to this request, and any reference to State Farm having a fiduciary duty is prohibited. However, the plaintiffs will be permitted to argue that the defendant had a duty of good faith and fair dealing.

*Request 7* - *Evidence during the liability phase of trial regarding State Farm's purported financial condition*.

The plaintiffs do not oppose the request to exclude such evidence. The defendant's motion is **granted** as to this request.

*Request 8* - *Any settlement discussions or proposals in this case, or any evidence regarding offers of judgment made by either party*.

The plaintiffs do not oppose the request to exclude such evidence. The defendant's motion is **granted** as to this request.

*Request 9* – *Arguments or evidence that State Farm acted in bad faith*.

This request is premised on the granting of summary judgment as to the plaintiffs' bad faith claim. Because the District Judge denied summary judgment as to plaintiffs' bad faith claim as to inadequate investigation of interior water damage, this request by the defendant is **denied**.

*Request 10* - *Hearsay statements allegedly made by State Farm's agent, Danielle Weaver*.

The defendant contends any statements allegedly made by Ms. Weaver to the plaintiffs is hearsay. The defendant's motion does not address whether any such statements would be admissible under the party-opponent exception to hearsay. *See* Fed. R. Evid. 801(d)(2). The Court **reserves** ruling as to this request. The parties shall comply with the applicable rules governing hearsay evidence. The Court will rule on any hearsay objections raised at pretrial conference or trial, after the specific evidence and arguments are more developed.

### D.    Opinion Testimony by Lay Witnesses, Testimony Not Based on Personal Knowledge, and Referring to Fact Witnesses as "Experts" (Doc. 37)

The plaintiffs did not designate an expert witness in this case. Noting that fact, the defendant seeks an order in limine barring the plaintiffs from seeking to elicit opinion testimony from contractors regarding the extent or cause of any damage to their home. The defendant also "seeks to prohibit Plaintiffs from testifying that their alleged damages were covered under the terms of their policy, as Plaintiffs are unable to testify as to the causation of any alleged damages and have not retained an expert to do so." (Doc. 54 at 2). Generally, a lay witness may only testify as to facts of which the witness has personal knowledge. *See* Fed. R. Evid. 602. Further, a non-expert's opinion is admissible only to the extent that it is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. *See* Fed. R. Evid. 701.

The plaintiffs do not dispute the applicable rules of evidence, but argue that the motion is premature and overly vague. The plaintiffs also object to any preliminary ruling that would prevent them from testifying that their home sustained damage after a weather event and testifying about problems relating to the damage.

This motion is **granted in part**, in that the parties shall not refer to any witness as an "expert" if that witness was not timely identified as an expert during discovery. Further, any testimony by contractors who are not designated experts is properly limited to matters within their personal observation and knowledge. Non-expert witnesses lacking personal

knowledge as to the cause of any damage may not testify as to that issue. *See*, *e.g.*, *Wilson*, 2022 WL 1555816, *13.

The defendant's motion is otherwise overly broad and speculative, and the Court finds no further pretrial exclusion is appropriate at this time and the motion is thus **denied in part**.[3] Although the defendant points out that none of the plaintiffs' witnesses have fulfilled the requirements for an expert under Fed. R. Civ. P. 26, the defendant does not identify any specific witness whose testimony would be barred on this basis, aside from the issue of causation, which is addressed above. *Cf. Wilson*, 2022 WL 1555816, *13 (N.D. Okla. May 17, 2022) (finding that specific contractors were not required to be designated experts simply because they "possess particularized knowledge in the fields of insurance adjusting and roofing," and that those witnesses' testimony would be "relevant and helpful to the jury because of their personal knowledge related to the at-issue insurance claim only."). The parties' counsel are capable of identifying any further issues of admissibility by way of objections during witness examination, and of challenging the foundation of any witness testimony through cross-examination of the witness.

### E.   Repair Estimates that Utilize Pricing that Post-Dates the Date of Loss (Doc. 36)

The defendant seeks an order in limine to exclude certain estimates for repair of damage the plaintiffs obtained from different contractors and from a public adjuster.

---

[3]   Generally, it appears that the plaintiffs would possess personal knowledge sufficient to testify properly as to their observations of the events they believe caused damage to their home, as well as their knowledge of their contract with the defendant. Thus, no pretrial exclusionary order is appropriate as to the plaintiffs' testimony on those issues at this time.

Specifically, defendant objects to (1) a repair estimate from contractor Beauty-Crete, Inc., dated January 21, 2021, for $41,263 in repairs to the pool and concrete around the pool, and construction of a new concrete deck to replace a wood deck; (2) a July 8, 2021 repair estimate by public adjuster Claim Advisors, LLC, for $186,263.01, including replacement of the roof and extensive interior repairs; and (3) an estimate by Tom's Outdoor Living dated March 14, 2023. The defendant argues that these estimates are based on later pricing information that is not relevant to the actual cash value of the property, as specified in the policy at issue in this case, which is defined as "the value of the damaged part of the property at the time of loss." (Doc. 36-1 at Greene-SF_0018). The defendant contends that its own estimate—on which it based its payment of $20,304.17—is the only estimate in the record based on pricing applicable at the time of loss on May 20, 2019.[4]

The defendant's request to exclude this evidence is **denied at this time**, as it appears that the defendant's objection to the estimates relates to the weight of the evidence rather than its admissibility. Disputed factual issues remain, including whether portions of the estimate prepared by State Farm was erroneously based on incorrect information, including assumptions about the materials and construction used on the plaintiff's deck and exterior wall near the pool. The parties can raise any issues of admissibility at the proper time in

---

[4]     Plaintiffs assert in their response brief that the date of loss is an issue in dispute. (Doc. 45 at 1). However, plaintiff Paul Greene affirmed in his deposition that the damages at issue in this lawsuit occurred due to a storm in May of 2019. (*See* Doc. 31-2 at 43-44). It is unclear from the record before the Court at this time whether there is covered damage that occurred as a result of, but on other dates beyond, the May 2019 storm.

the course of trial. Both parties will also have the opportunity, through cross-examination, to develop evidence as to the weight to be accorded to any witness testimony.

## III.   Plaintiffs' Motion to Exclude Defendant's Expert (Doc. 40)

Defendant retained Michael J. Berryman, a licensed general contractor, to inspect the plaintiffs' property and produce an expert report and testimony opining as to (1) the cause and extent of damage to the plaintiffs' property; (2) whether the scope of estimates provided by the plaintiffs' contractors was appropriately tailored to the storm damage; and (3) whether State Farm's damage repair estimate was sufficient to accomplish the necessary repairs. The plaintiffs argue, first, that Mr. Berryman's opinion is not relevant to the defendant's decision on their claim and defendant is improperly attempting to "mend its hold" in relation to the bad faith claim. However, Mr. Berryman's opinion is offered, at least in part, to rebut the plaintiffs' breach of contract claim. The plaintiffs cite no authority that it is not admissible for this purpose, and the Court rejects the plaintiffs' contention that it is not admissible on relevancy grounds. Thus, the Court proceeds to consider the plaintiffs' challenge to Mr. Berryman's opinion under Federal Rule of Evidence 702.

### A.   Expert Admissibility Standards

Under Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 597 (1993), the Supreme Court held that district courts act in a "gatekeeping role" to ensure that scientific expert testimony is relevant and reliable. An expert's opinion must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The applicability of *Daubert* was later expanded to apply to the opinions of all experts, not just scientific experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

In order to determine whether an expert's opinion is admissible, the court first determines whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. Second, if the expert is so qualified, the court determines whether the opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. These non-exclusive factors include: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the "known or potential rate of error" of a technique; and (4) whether the theory or technique has "general acceptance." *See Daubert*, 509 U.S. at 593-94. The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id.* at 593.

B.      Discussion

Plaintiffs contend that Mr. Berryman lacks relevant experience in the construction

industry and instead has focused his career on testifying on behalf of insurance carriers.

Applying the *Daubert* methodology, the Court finds that Mr. Berryman appears to be

qualified by virtue of his experience and specialized knowledge in the construction

industry. Mr. Berryman is the president and CEO of Berryman Enterprises, Inc. and has

been a restoration general contractor—thus, focusing on restoring damages due to storms

and other events—for more than 40 years. (*See* Doc. 43-1 (Berryman report)). Mr.

Berryman's report states that his firm has been hired on more than 1,450 occasions to

inspect and render opinions on the nature and extent of property damages. *Id*. at 2. *See also*

*Global One Eng'g, LLC v. Sitemaster, Inc*., No. No. 15-cv-583-CVE-FHM, 2016 WL

6426388, *1 (N.D. Okla. Oct. 31, 2016) (finding that "with over 38 years of experience as

a general contractor, Mr. Berryman is one qualified as an expert . . . by reason of his

knowledge and experience" on topics relating to billing and business practices in the

construction industry). As such, the Court finds that Mr. Berryman satisfies the preliminary

requirement of qualification under Fed. R. Evid. 702.

Plaintiffs also challenge Mr. Berryman's methodology and the reliability of his

opinions. Plaintiffs argue that Mr. Berryman's report is based on unreliable data and

engineering methodology. The plaintiffs further contend that his opinions are improperly

founded on hearsay, including on historical weather data from the National Oceanic and

Atmospheric Administration, which Mr. Berryman reviewed to determine whether wind

conditions could have caused the damages to the plaintiffs' property. Under Fed. R. Evid.

703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." "As a general rule, an expert may testify as to hearsay matters, not to establish substantive facts, but for the sole purpose of giving information upon which the witness relied in reaching his conclusion . . . ." *U.S. v. Sowards*, 339 F.2d 401, 402 (10th Cir. 1964). "Although the best evidence and hearsay rules are important, they should not be applied to prevent an expert giving in a reasonable way the basis for his opinion. . . . Within reasonable bounds, the expert may testify to the facts upon which his opinion . . . is based and the court in the exercise of its sound discretion can assure that the evidence does not go afield." *Id*. (quoting *United States v. Featherston*, 325 F.2d 539, at 542-43 (10th Cir. 1963)).

"We have interpreted Rule 703 as allowing an expert to reveal the basis of his testimony during direct examination, even if this basis is hearsay, provided that the facts or data underlying his conclusions are of a type reasonably relied upon by others in his field of expertise. The hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted." *Wilson v. Merrell Dow Pharm., Inc*., 893 F.2d 1149, 1153 (10th Cir. 1990) (citing *United States v. Affleck*, 776 F.2d 1451, 1457-58 (10th Cir. 1985)).

Here, the plaintiffs do not dispute the accuracy of the weather data Mr. Berryman cited in his report. The Court finds that Mr. Berryman's usage of historical weather data appears to be reliable and may be helpful to the jury in understanding the evidence or

determining facts in issue. Similarly, the plaintiffs object to Mr. Berryman's reliance on "an engineering report," but do not identify which data they object to, or point to any particular errors or inaccuracies in that data. In light of Mr. Berryman's decades of experience in construction and assessing property damage, the Court finds that the plaintiffs have not shown his opinion is not qualified on this basis.

Plaintiffs contend Mr. Berryman's opinion is insufficient under the *Daubert* factors, noting that Mr. Berryman did not "test" his theories or techniques, and his methods have not been peer-reviewed or published. However, the plaintiff has not shown how any testing or peer review of methodology were necessary or would be helpful. Mr. Berryman testified in his deposition,

> My opinions in this matter are going to be based upon all the file documentation that I've reviewed, the inspection that I made personally, and some research that's been done that's been put into my report, along with some attachments and, of course, my more than 40 years of experience working as a restoration general contractor and as a building consultant.

(Doc. 43-2). Mr. Berryman's report adequately explains how his opinions were based on his in-person inspection of the property, research of relevant data, and applying his extensive relevant experience, which are sufficient indicia of reliability. Any challenges to the foundation or substance of Mr. Berryman's opinion can be sufficiently covered by counsel on cross-examination.

Plaintiffs argue that portions of Mr. Berryman's opinion improperly opine as to questions of insurance coverage. Mr. Berryman's report states that his "opinions do not address any questions of insurance coverage." (Doc. 43-1 at 7 (Berryman-Greene_0007)). Opinion #3 set forth in Mr. Berryman's written report asserts that the scope of work bid by

Beauty-Crete for repairing the pool and surrounding concrete and replacing the pool deck "goes far beyond anything necessitated by storm damages," and that it encompasses "effects of wear/tear and poor construction techniques." (Doc. 43-1 at 18 (Berryman-Greene_0018)). Opinion #4 states that the $186,263.01 estimate provided by Claim Advisors, LLC is unreliable and is "based on a restoration scope of work that is excessive and without basis." *Id*. at 19 (Berryman-Greene_0019). Opinion #5 in Mr. Berryman's report indicates that State Farm's estimate to restore the storm damages to the plaintiffs' property "was more than will[sic] required to accomplish the repair of storm damage." *Id*. at 21 (Berryman-Greene_0020). The Court rejects the plaintiffs' argument that these portions of Mr. Berryman's report improperly opine on issues of insurance coverage.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion in Limine Regarding Punitive Damages (Doc. 38) is **granted in part**; Defendant's Omnibus Motion in Limine (Doc. 39) is **granted in part and denied in part**; Defendant's Motion to Exclude Opinion Testimony by Lay Witnesses, Testimony Not Based on Personal Knowledge, and Referring to Fact Witnesses as "Experts" (Doc. 37) is **granted in part and denied in part**; Defendant's Motion in Limine Regarding Repair Estimates That Utilize Pricing that Post-Dates the Date of Loss (Doc. 36) is **denied**; and Plaintiff's Motion to Exclude Defendant's Expert (Doc. 40) is **denied**.

**IT IS SO ORDERED** this 19th day of September, 2023.

Christine D. Little
United States Magistrate Judge